Okay, counsel, before we start the clock, Mr. Dahlgren, Ms. Maida, just a little caution. As you know, with these telephonic hearings, it can be a little difficult to communicate between the judges and the lawyers, largely because we don't have that in-person eye-to-eye contact. So please listen carefully for when a judge starts talking. They're going to be trying to ask questions, you know. And when a judge starts, please stop so you can hear what they're asking. Am I clear with both counsel? Yes, Your Honor. Yes, Your Honor. Okay, Mr. Dahlgren, you're reserving three minutes, right? That's correct. Okay, when we get that tone for the three minutes, I'll just interject to remind you so you don't lose that time for rebuttal. But it's up to you. You can keep talking if you want. Understood? Yes, Your Honor. Okay, then let's proceed. May it please the Court. This case involves the highly fact-specific question of written description that was decided in early summary judgment. Mr. Dahlgren? Yes, Your Honor. This is Jed Wallace. Where in the record is there a determination of the qualifications of a posita? Your Honor, I believe there was a recitation in at least Dr. Sessions' declaration. I'm checking to see if it was in the record. It was not a point that was disputed between the parties. Was there an actual determination by the Court? My recollection is that that issue was not addressed in the Court's opinion, no. Or otherwise, correct? That's my understanding, Your Honor. And Ms. Metzler can correct me if I'm mistaken, but that's my understanding. Okay, is it Intel's position that a person of skill in the art is a district court judge with 20 years of patent litigation experience? Your Honor, I can't speak for Intel, but in Flash Control's opinion, we would say no. And that's one of the issues that we had with the district court's opinion was that it stepped into the shoes of not just a trier of fact, but a person of skill in the art, and made a variety of determinations which go to the core of the written inscription analysis. One of the first factors is the knowledge and understanding of a person of skill in the art in a particular area. And to have the Court substitute its own knowledge is- I understand. Yeah. I understand, but I'm asking you about-if you can't speak for Intel, I won't ask you to further answer it. But I'm going to ask them the same question. I understand, Your Honor. And just to be clear, our opinion is that that would not be the correct qualifications for a person of skill in the art in this area of technology. Okay. Thank you. I don't have anything else. And, Your Honor, I think that that kind of raises one of the points or dovetails nicely with what I was going to discuss, is that I think that there are a number of different issues with the district court's opinion on how this was handled that just suggests that there was some type of misapplication of the appropriate safeguards and standards for summary judgment. And, you know, whether or not it was because of the concurrent markman, the fact that now remains is that there was an incorrect result and an incorrect application of the law. So regardless of the reason, it's flexible as position that the district court did not follow the appropriate standards for summary judgment. And one of the, I think, issues that flowed from that was the district court, if you look at the Joint Appendix on pages 221 through 222, the district court during the hearing requested that flash control, you know, not focus on its experts' testimony, but focus on the intrinsic record when we were discussing the written inscription issue. And I think that that's just an instance that shows the, again, the failure to follow proper summary judgment law and use the safeguards that are built into it appropriately. And as you said, instead the court took on the role of prior fact and the person's skill in the art and disregarded the entirety of our experts' testimony, even where it had no connection to the alleged error that Intel had identified in terms of the methodology used by our expert. And in doing so, we believe that that was an abuse of discretion. And, again, this goes to the fact that it's a case dispositive motion. It's before discovery has commenced on a not well-developed record. And we think that viewing everything in light most favorable to the non-movement, that the testimony identified by Intel doesn't really state what they are trying to portray it as stating. Dr. Bagherzadeh considered the claims. He noted that he looked at the claims. But if you look at the questions that he was being presented with, they almost I think in every instance were based on snippets or isolated portions of the specification. And even in the one instance where they were discussing about using all four columns of text, I mean, this is a very concise and dense patent. There's a lot of information in the specification. But even that question, it still admitted numerous figures. The question was looking at figures three and nine and the entirety of the specification, can you say this? And, again, by taking out figure six, for example, which Dr. Bagherzadeh relied on, I think his response was fair. And in view of the remainder of his testimony, I think that it's clear that he did not rely on the claims as actual written inscription support. And I think one of the best evidence of that is his declaration itself. It never once points to the claims as written inscription, you know, bootstrapping, if you will. And I think his confusion as not being a lawyer is understandable, particularly when you read the transcript. But having set aside his testimony, the district court went on to make, you know, a number of factual findings. And these were fact findings that were on issues that Intel had never raised, that had never been briefed. For example, how a person with a skill in the art would understand a register. And in that instance, I mean, just going to the joint appendix at, you know, page 18, the district court said that a person would understand that they're fairly small and that they wouldn't be suitable as the first and second buffers. And I think that this is not only improper judicial kind of fact finding during summary judgment, but it's also contradicted by the record. The joint appendix, page 412, there is a Micron publication that Intel relied on. And it notes that registers can hold more than, you know, 16 or 32 bits, as the district court said. In fact, that they can hold, you know, up to 2 kilobits. And that's consistent with the patents ensued as well. If you look at figure 6 of the 880 patent or figure 6A and B of the 537 patent, which are essentially identical except for the numbering, they also support the idea that these registers can serve as these buffers and actually hold more data than the district court stated. Specifically, the page register, for example, in the figure 6. And figure 8 provides further support as well. And the district court also, I think, incorrectly stated that the register would not be understood to be generic memory. Dr. Bagherzadeh had provided testimony that contradicted this point. Again, the district court set that aside, but it didn't provide any evidence. And it introduced this, you know, condition code register, which wasn't referenced anywhere else in the record, you know, for the first time as an example, supposedly supporting it. And in another instance, and again, the briefing covers this in more detail, but I think another instance that really caused us some concern was the district court's conclusion that the new commands that are being recited in the patents ensued, the district court concluded they were descriptions of the prior art and therefore, by definition, do not disclose the claim of invention. And there wasn't any evidence that was provided to support that conclusion. Intel had not made that argument, and I think it's wrong factually. And I also think it's wrong as a matter of law. Here, the patents ensued are taking existing architecture and optimizing how it can be used to improve performance. And it's essentially combining different aspects of things that are known. Now, I'm not conceding, and I don't believe that the new commands that are recited in the patents ensued are in the prior art, but assuming that they even were, there is nothing inherently wrong in combining elements to improve performance and have an invention. I think that there's plenty of case law on that point. And so I think that that's just another example where the district court erred. Now, there were also some legal confusion, I think, about how to apply the law. And one, I think, that particularly stands out was conflating the standard for enablement with written inscription. Intel repeatedly criticized the patents ensued for not disclosing how certain things could be achieved or how they could be done. And that also found its way into the district court's opinion below. And that's really not the standard for written inscription. Intel was free to challenge enablement. If we go back down, it would be presumably free to do that below later, but it chose not to. And by pivoting and focusing on this lack of how, I think that it took the direction of the court's analysis, kind of went off track somewhat as a result. And that kind of segues into the second thing that I want to discuss is that there were some, I believe, issues with how Intel approached this dispute in briefing, and in particular, changing the arguments throughout the course of briefing. The initial open brief referred to essentially two aspects. They cited three limitations, but it really was this lack of any type of second buffer that they alleged, and the inability to move or read or write portions of a page. And with that being the focus of the open brief, that's what we obviously responded to. Then in the reply, Intel brought in this integrated whole concept, a term that had not been raised before except for the first time during Dr. Bagherzadeh's deposition. And Flash Control was left in a position where we did not have the chance to provide expert testimony, or really a meaningful chance to respond to that argument. And we tried to raise this during the hearing, but were unsuccessful. I'll close. I do want to reserve my time. But the court took that theory up, and that is now addressed, I guess, on my rebuttal time. Okay. Ms. Maida? Yes, may it please the court, Ms. Maida, on behalf of Dependent Appellee Intel. Okay, Ms. Maida. This is Judge Wallach. Same questions. Where in the record is there a determination of the qualifications of a person's skill in the art? Your Honor, it's not expressed in the district court's opinion, but there was no dispute between the parties with respect to the level of ordinary skill. At Appendix 445, which is our brief to the district court, we laid out what the level of ordinary skill is. And at Appendix 652, which is the expert opinion, Flash Control's expert, he said that his opinions would not differ under the two parties' slightly different articulations of the level of ordinary skill in the art. So, as Mr. Dahlgren said, there was no substantive dispute between the parties as to the level of skill. Ms. Maida, did that definition include a district court judge with 20 years of patent litigation experience? No, Your Honor, it did not. Okay. And, Your Honor... Is it Intel's position that the district court judge was a person of skill in the art? No, Your Honor. It's Intel's position that what the district court judge did here, if we look at the first 19 pages of his opinion, is go through in significant detail and identify specifically the arguments made by both sides and the evidence submitted by both sides, including the expert opinion of Intel's expert, and although he ultimately exercised discretion not to rely on the expert opinion of Flash Control's expert, he actually looked at the evidence and the concessions of Flash Control's expert in deposition and walked through systematically all of the evidence to conclude, and this is at the top of A17, where after going through the parties' evidence, he says the court finds Intel's arguments compelling, and then he says that Intel successfully presented issues with specifications that result in certain limitations lacking written description, and then he says Intel's reply rebuts every point raised by Flash Control to support the presence of written description. That alone... Ms. Maida, this is Judge Waller again. Throughout the opinion, the district court repeatedly makes what appear to me to be direct findings that a person of skill would determine certain things. What evidence supports that finding when we don't know what a person of skill is? Yes, Your Honor, so I think that... I would disagree with the premise of the question in the following way, Your Honor, which is I think we do know what a person of ordinary skill is. It is true that the court did not... Do you disagree that the district court specifically said, I am a person of skill in the art? What the district court said at footnote one is that the court is relying on its experience and knowledge to determine the understanding of a faux cida in the remainder of this section, which begins at the bottom of page A17. Right. But for the part that precedes that, which is his detailed recitation of all of the arguments and the evidence presented by Flash Control and by Intel, systematically going through each piece of the specification and the concessions of Flash Control's expert, he is addressing the evidence that was submitted by the parties. And with respect to that portion of the analysis, there's no dispute between the parties as to what the level of ordinary skill is as reflected on A445 and A652. So even if we were to... I don't see... Look, we may well agree with the result. The analysis is pretty thorough. But I don't see how we can not send this case back to make evidentiary findings about a person of skill. Your Honor, I would submit that you can, and there's a couple of reasons for that. One is because the judge said that he was applying his knowledge and experience, starting with the section at the bottom of page A17. If we evaluate what he was doing before that, for the first 15 pages of his opinion, he was applying and analyzing the evidence submitted by both parties where there's no dispute as to the level of ordinary skill that the two side experts were relying on. And just that alone would be sufficient to find that there is no written description here. And we know that because we have not heard anything from the other side that would actually identify anywhere, set aside all of the procedural arguments that they've made, even if we were to give them full credit for their expert's opinion, even if we were to give them full credit for all the arguments they're trying to make now that they didn't make below, they still have not pointed anywhere in this record where you would find the critical element of the claim, which is the reading and writing of a portion of a page in the particular way that it's claimed. So if we were to look at the district court's opinion, or I should say the district court's decision as opposed to the opinion, because this court reviews decisions and doesn't review opinions, if we were to look at the decision and we were to look at the very specific and very detailed analysis of all of the arguments made by both sides and all of the evidence submitted by both sides and the conclusion of the court that it finds Intel's arguments compelling and that Intel rebutted every point made by flash control, that alone would be sufficient to affirm the district court's judgment that there is a lack of written description here. And on the merits, there's been nothing identified by flash control, either at the trial court or to this court, critically to this court on appeal, that would show anywhere in this patent specification that the inventor possessed the concept of doing the operations necessary to move data between the two buffers and the volatile memory at the portion of a page level, which is the critical aspect of these claims. So whatever your honors might think about their arguments with respect to footnote one and the additional findings that are made at pages 15, 16, 17, 18, you don't need to reach those issues because all of the court's opinion prior to that would be more than sufficient to support the judgment of invalidity for lack of written description. And there, with respect to those findings, there was no dispute below as to the level of ordinary skill in the arts. And the district court did systematically go through each piece of evidence that flash control had relied upon and determined that that aspect of the claims, actually performing the claim function at a portion of a page level as required, is not anywhere in the evidence they cited, even when the district court did consider the expert testimony and the admissions of their expert. And that's where I would, Your Honor, I would take a step back and look at what's actually being claimed here. What's actually being claimed here is a very specific method for moving data between a non-molecule memory, or reading and writing data, I should say, to a non-molecule memory using a specific configuration of structures where you're actually reading and writing at a portion of the page. And the specification, while it is very thin, suggests that that's the thing, that's the efficiency improvement that the patent is directed to. And the claims outline a very specific configuration of those elements and require that it be done at a portion of a page level. And while there are a variety of procedural arguments that counsel for flash control made, none of those procedural arguments would actually resolve the fundamental problem that was identified in the first 15 pages of the district court's opinion. And it's reflected in the intrinsic record here, which is that there's nothing in the patent disclosure, not in Figure 3, not in Figure 6, it's not in Figure 9, not in the few snippets of the specification they point to. There's nothing in the patent disclosure that would actually tell anyone how you would know that this inventor was in possession of doing it at a portion of a page, because they have not cited anything, even if you were to fully credit their expert's opinion. And so when we look at the district court's opinion and we look at the district court going through at pages A13, A14, A15, A16, and to the top of A17, column by column, figure by figure, each piece of evidence that they and their expert relied on and explaining why Intel was correct and Intel's expert was correct, that those pieces of the portion of the specification would be inadequate, and then concluding that Intel's arguments were compelling, that is a sufficient determination of lack of written description for this court to review, and there's been nothing identified on appeal in any of the patent specification and any of the figures, or even in the expert opinion, that would actually undermine that district court judgment based on the recitation of all of the evidence that the district court looked to, even if we were to stop analyzing the opinion at the top of A17. But I also want to briefly touch on some of what was done and some of what counsel pointed to towards the back part of the opinion where the district court made some additional findings. For example, counsel said, if we look at A22, that the district court wrongly concluded that the commands read byte out of page and write byte out of page are in the prior art and that that was some sort of factual determination made by the district court. I think that is a misreading of the district court's opinion. So if we look at A22, what the district court was doing was responding to an argument made by flash control that this was some sort of written description support for the idea that you could do something at a level of granularity below a page, so a portion of the page. And what the district court said is, by contrast, these commands are descriptions of the prior art and by definition do not disclose the claim's invention. In that sentence, the district court is referring to the concepts of reading and writing, and we know that because in the very next sentence, which is not referred to by counsel for flash control, the district court goes on to say, as the invention claims a more efficient implementation of the commands in the context of accessing a non-volatile memory at the granularity of a page, simply reciting the high-level concept will not suffice. Furthermore, even if the court assumes that a second buffer is present, then it goes on to continue to analyze that piece of evidence. So I think even if we were to look at the portion of the opinion where the court makes these additional findings, the findings are not some sort of new fact finding. They are attempting to respond to arguments made by flash control. And in this case, I think explaining something that is really beyond dispute, which is reading and writing are known, but here the invention is doing that at a level of granularity below the page, and if that's the case, the high-level concept is not sufficient to provide written description support. Unless your owners have any additional questions, my final point would be if we were to look at each piece of evidence cited by flash control as the district court did, the fundamental failing at the district court level as identified by the district court in its opinion, and again on appeal, is even if we were to fully credit all of the evidence that flash control is citing now and all of the arguments that they're citing now, there's been nothing that would identify how you would know that this person, that this inventor had possession of a portion of a page, which is the critical element of the claim. And that failing is the judgment of the district court, this court is reviewing, and that judgment is correct, and we would respectfully ask your owners to affirm. Thank you, counsel. Mr. Dahlgren? Yes, Your Honor. Briefly, I think that what counsel articulated, that there's no evidence in the records and that the arguments that flash control presented below were deemed insufficient, emphasizes and highlights the lack of notice and lack of meaningful opportunity to respond that flash control had before the district court. Again, Intel had shifted its arguments to this integrated whole concept in its reply, and now saying that there's a lack of any evidence in the record to support these new findings, I mean, that's exactly, that's precisely the prejudice that we were trying to highlight for this court that we believe is inappropriate. And I think that this, again, emphasizes that this case should be sent back and we should be given at least an opportunity to fairly present our case and address the arguments that Intel is raising, and also whichever arguments that the district court had made. Given the chance to submit expert testimony and other evidence, I think there is support for the claims. And that's the last piece I wanted to touch on is kind of the so what part. And in our reply, and even in our opening brief, we point to SACRED-12, for example, as providing support. In the notations below, it talks about three different aspects of this kind of volatile memory, I think suggesting fairly that it can be discrete components. And then also, in our reply, we point to Figure 9, but also this SRAM mode that Intel had tried very hard to argue is somehow outside the scope of this patent. But when you look at the disclosure about combining these unused page buffers so it can be used as SRAM in the whole device and not just one page, and that's coming from Figure 9, then we do have the three different components. And that's even assuming that the court was correct and requiring that they be separate and distinct. That was a client construction issue that we went on notice of and never had the opportunity to really brief. So, setting that aside, we think that there is support. And there's the address decoding, the circuitry, and everything like that. I think that, given the opportunity, and if the appropriate and proper procedures were followed, would result in a different outcome below. And, again, that would entail everything that goes along with summary judgment. Viewing the facts and lightness or non-movement. Applying the correct evidentiary burden. We have noted that the district court used terms such as compelling. Wrap it up, counsel. Your Honor, with that, unless you have any questions, I'll conclude my argument. Okay, that's the last case. The matter will stand submitted. I'd like to thank both counsel. And since this is the last oral argument in which I will preside before I go senior, I'd like to thank the bar in general for their courtesy and hard work. These matters will now stand submitted. Thank you. The Honorable Court is adjourned until tomorrow morning at 10 a.m.